# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JAMES BAKER, | : | |
| | : | Civil Action No. 14-8076 (SDW) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| ROBERT BUECHELE, et al., | : | |
| | : | |
| Respondents. | : | |

**WIGENTON**, District Judge:

Presently before the Court is the amended petition for a writ of habeas corpus of James Baker ("Petitioner") brought pursuant to 28 U.S.C. § 2254. (ECF No. 6). Following an order to answer, Respondents filed a response to the petition (ECF No. 8), to which Petitioner replied. (ECF No. 14). For the following reasons, this Court will deny the petition and will deny Petitioner a certificate of appealability.

**I. BACKGROUND**

In affirming Petitioner's conviction, the Superior Court of New Jersey – Appellate Division provided the following summary of the factual background of this matter:

> We discern the following facts from the testimony at trial. At 6:00 a.m. on January 22, 2009, several members of the Elizabeth Police Department executed a search warrant at a one-family residence. When detectives entered, they first encountered [Petitioner]'s mother Alberta, his brother Ernest, and his juvenile cousin on the first floor. Detectives then proceeded upstairs to an attic bedroom where they found [Petitioner] alone, dressed only in his boxer shorts. When detectives searched the bedroom, they found five glassine envelopes of heroin in a coffee cup on the dresser and eighty more glassine envelopes packaged together inside an eyeglass case on the

1

> nightstand. Detectives also recovered $2000 from [Petitioner]'s shoe in the closet, two cell phones and [Petitioner]'s car keys on top of the dresser, and several pieces of mail addressed to [Petitioner] in the top dresser drawer. [Petitioner] was arrested and later indicted.
>
> At trial, the State presented the testimony of three officers who participated in the search. The State also presented an expert in narcotics distribution who testified that the amount of heroin recovered, and the manner in which it was packaged, indicated it would not have been for personal use, but for sale and distribution.
>
> [Petitioner] presented the testimony of his mother Alberta, and his brothers Ernest, Jerome, and Edward Baker. They all testified essentially that the bedroom in the attic was not assigned to anyone in particular; rather, it was first-come-first-serve for the brothers, including another non-testifying sibling, Jeffrey, depending on who stayed at the residence on a particular night. None of the defense witnesses knew who was staying in the bedroom that night or how the heroin got there.
>
> Edward Baker further testified that he had given [Petitioner] $2000 to use to get an apartment and left the money in [Petitioner]'s shoe in the attic closet. He also testified that he had been arrested numerous times for heroin possession, that he had an addiction spanning twenty years, that he was purchasing and using heroin at the time of the search, and that he was using up to twenty envelopes of heroin per day. However, he denied putting the heroin in the attic.

(Document 5 attached to ECF No. 8 at 3-4).

Based on the testimony produced at trial, a jury convicted Petitioner of third degree possession of a controlled dangerous substance in violation of N.J. Stat. Ann. § 2C:35-10(a)(1) and third degree possession with intent to distribute in violation of N.J. Stat. Ann. § 2C:35-5(a)(1) and 5(b)(3). (*Id.* at 1). A third charge for which Petitioner was indicted, distribution of a controlled substance within five hundred feet of a public park, was dismissed prior to trial. (*Id.* a 2). Petitioner's convictions were merged for sentencing purposes, and Petitioner was sentenced to five years in custody with a thirty-month period of parole ineligibility. (*Id.*).

Following his sentencing, Petitioner appealed. On June 5, 2014, the Appellate Division affirmed Petitioner's conviction and sentence by way of a written opinion, but remanded Petitioner's criminal matter so that the judgment of conviction could be edited to reflect the fact that Petitioner's charge for distribution near a park was dismissed prior to trial. (*Id.* at 1-11). Petitioner filed a petition for certification with the New Jersey Supreme Court, but that petition was denied on November 14, 2014. (Document 8 attached to ECF No. 8). Petitioner did not file a petition for certiorari, nor did he file a petition for post-conviction relief prior to the filing of his habeas petition in this matter. Instead, Petitioner filed his initial habeas petition on or about December 24, 2014. (ECF No. 1). That petition was terminated on March 4, 2015, because Petitioner had not used the form required for all *pro se* habeas petitions. (ECF No. 2). Petitioner filed an amended petition on or about April 1, 2015, (ECF No. 3), but that petition was dismissed on May 4, 2015. (ECF No. 5). Petitioner thereafter filed his current amended habeas petition on or about May 26, 2015. (ECF No. 6).

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *see also Parker v. Matthews*, 567 U.S. 37, 40-41

(2012). Under the statute, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, --- U.S. ---, ---, 125 S. Ct. 1372, 1376 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

B.  Analysis

1.  **Petitioner's warrant-related evidence claim**

In his first claim, Petitioner asserts that the introduction of testimony that the search which resulted in his arrest was conducted pursuant to a warrant denied him a fair trial because it suggested that Petitioner was the target of unspecified police investigations, suggesting his guilt to the jury. In this claim, Petitioner essentially seeks to challenge the state trial court's evidentiary ruling permitting the police officers to indicate that they searched Petitioner's mother's home pursuant to a search warrant in order to establish that they were legally present in the home during the search. Because "the Due Process Clause does not permit the federal courts to engage in a finely-tuned review of the wisdom of state evidentiary rules," *see Marshall v. Lonberger*, 459 U.S. 422, 438 (1983), the admissibility of evidence presented at trial is generally a question of state law which is not cognizable in habeas corpus. *See Keller v. Larkins*, 251 F.3d 408, 416 n. 2 (3d Cir. 2001) ("A federal habeas court . . . cannot decide whether the evidence in question was properly allowed under the state law of evidence"). A habeas petitioner may therefore only establish a cognizable habeas claim based on a state court's evidentiary ruling by showing that the admission of the testimony in question denied him Due Process by depriving the petitioner of the "fundamental elements of fairness in [his] criminal trial." *Glenn v. Wynder*, 743 F.3d 402, 407 (3d Cir. 2014) (quoting *Riggins v. Nevada*, 504 U.S. 127, 149 (1992) (Thomas, J. dissenting)). "The Supreme Court has 'defined the category of infractions that violate 'fundamental fairness' very narrowly, based on the recognition that, beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.'" *Id.* (quoting *Medina v. California*, 505 U.S. 437, 443 (1992)). "In order to satisfy due process, [Petitioner's] trial must have been

fair, it need not have been perfect." *Id.* (citing *United States v. Hasting*, 461 U.S. 499, 508 (1983)). Thus, a Due Process violation will only occur in the context of an evidentiary ruling when the state court's decision was "so arbitrary or prejudicial that it rendered the trial fundamentally unfair." *Scott v. Bartkowski*, No. 11-3365, 2013 WL 4537651, at *9 (D.N.J. Aug. 27, 2013) (citing *Romano v. Oklahoma*, 512 U.S. 1, 12-13 (1994)).

In his petition, Petitioner admits that, at trial, the trial court permitted the police officers to testify only that a warrant had been issued for the residence in which Petitioner and the drugs were found, and not to expound on that point. (*See* ECF No. 6 at 5). Indeed, when, during jury deliberations, the jurors asked the trial court to "give [an] explanation on why the warrant was issued" and why "a covert action" was not taken, the trial judge gave the jury the following instruction:

> the testimony that a warrant was issued was introduced merely for the purpose of telling you that the police officers['] entry into the building was authorized. As to why it was authorized[,] that is not part of this case, it's something that you should not consider and there should be no speculation regarding it whatsoever.

(*See* Document 5 attached to ECF No. 8 at 8). At trial, Petitioner's attorney neither objected to this instruction, nor to the admission of the warrant testimony itself. (*Id.*). When Petitioner raised this claim on direct appeal, the Appellate Division rejected it, finding that the warrant testimony was admissible under state law evidentiary rules in order to establish that the police were legally present at the time of the search, and that Petitioner had in any event suffered no prejudice from the testimony because there was no testimony suggesting that Petitioner himself was the target of the warrant because the home that was searched was, according to the testimony of witnesses for both Petitioner and the State, the at least part time home of numerous individuals

including Petitioner and his brothers, many of whom used the bedroom in which Petitioner was found. (*Id.* at 8-10).

As the Appellate Division observed, any of these individuals, including Petitioner's brother who testified at trial to having a considerable heroin habit, could have conceivably been the target of the warrant used to search the residence. (*Id.* at 10). The only testimony admitted into evidence regarding the warrant was that it existed and therefore provided a legal basis for the police's presence in the home during the search. Given the limited testimony establishing the existence of the warrant without expounding on its cause or basis, the limited purpose for the admission of that testimony, and the strong rebuke of any consideration of the warrant for any improper basis given to the jury by the trial judge, it is clear that the warrant testimony admitted at Petitioner's trial was not so "arbitrary or prejudicial that it rendered the trial fundamentally unfair," and that Petitioner is not entitled to habeas relief on this basis. *Scott*, 2013 WL 4537651 at *9; *see also Glenn*, 743 F.3d at 407. Likewise, given the limited testimony regarding the warrant and the trial court's strong instruction that the jury not consider the basis of the warrant in any way, it is clear that the admission of this testimony did not prejudice Petitioner and was therefore harmless and could not provide the basis for habeas relief in any event. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (alleged errors which do not have a "substantial and injurious effect or influence in determining the jury's verdict" are considered harmless on collateral review and do not warrant habeas relief).

7

## 2. Petitioner's sufficiency of the evidence claim

Petitioner also asserts that his conviction is improper because the evidence presented at trial was insufficient to establish that he possessed the heroin seized in the bedroom, and as such that there was insufficient evidence at trial to support his conviction. In reviewing a claim challenging the sufficiency of the evidence, "a reviewing court must ask 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Eley*, 712 F.3d at 847 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Thus, a reviewing court may overturn a conviction for insufficiency of the evidence only "if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* (quoting *Jackson*, 443 U.S. at 324). "Under *Jackson*, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove he offense is purely a matter of federal law." *Coleman v. Johnson*, 566 U.S. 650, 655 (2012). Under this "deferential federal standard," juries have "broad discretion in deciding what inferences to draw from the evidence presented at trial" and federal court's must not "unduly impinge[] on the jury's role as factfinder" by engaging in "fine-grained factual parsing." *Id.* Thus, so long as a rational fact finder could, taking all reasonable inferences into account while viewing the evidence in the light most favorable to the State, find the essential elements beyond a reasonable doubt, then a sufficiency of the evidence claim must fail. *Id.*

Here, Petitioner challenges his convictions for drug possession and possession with the intent to distribute alleging that his being found in the same room as the drugs is insufficient to support his conviction. Under New Jersey law, possession of a controlled dangerous substance

8

in violation of N.J. Stat. Ann. § 2C:35-10(a) has the following elements: that the defendant "knowingly or purposely" possesses "actually or constructively" a controlled dangerous substance. *See, e.g., State v. Scott*, 940 A.2d 299, 304 (N.J. App. Div. 2006). In order to establish possession with intent to distribute in violation of N.J. Stat. Ann. § 2C:35-5, the state must additionally show that the defendant possessed the requisite intent to distribute the controlled substance in his possession. *See, e.g., State v. Lewis*, 886 A.2d 643, 647-48 (N.J. 2005). As the Appellate Division explained to Petitioner on direct appeal,

> Possession of a [controlled dangerous substance] . . . can be either actual, constructive, or joint. A person constructively possesses a [controlled dangerous substance under New Jersey law] when the circumstances permit a reasonable inference that he has knowledge of its presence, and intends and has the capacity to exercise physical control or dominion over it during a span of time.
>
> Criminal possession may not be inferred from a defendant's mere presence at the location where the contraband was found. However the accompanying circumstances may permit such an inference to be drawn.

(Document 5 attached to ECF No. 8 at 5-6, internal citations and quotations omitted).

The testimony produced at Petitioner's trial established that, during the search of his mother's home in the early morning of January 22, 2009, Petitioner was found alone in an attic bedroom in his boxer shorts. Police found in that room a significant number of glassine packages of heroin, some in a coffee cup on the dresser in the room, the rest in a glasses case on the nightstand in the room. Police also found Petitioner's car keys and two cell phones on the dresser, as well as several pieces of mail addressed to Petitioner in the top drawer of the dresser, and further discovered two thousand dollars in cash in Petitioner's shoes in the closet. Based on these facts, a reasonable juror could have reasonably inferred that Petitioner had slept in the room, and that

9

the heroin in the room, some of which was in a coffee cup found in close proximity to two phones and Petitioner's keys, and the rest of which was found on a nightstand beside the bed in which Petitioner had apparently been sleeping, belonged to Petitioner and were placed there by him. Thus, viewing the facts in the light most favorable to the State and taking all reasonable inferences into account, it is abundantly clear that the evidence provided at trial was more than Petitioner's mere proximity, and was likewise more than sufficient to permit a reasonable factfinder to infer that Petitioner at least constructively possessed the heroin found near and among his belongings in the room in which Petitioner had most likely been sleeping. Thus, there was sufficient evidence to permit a rational factfinder to conclude that Petitioner was in possession of the heroin. When combined with the expert testimony provided at trial suggesting that the quantity of heroin found in the room was greater than that which would be kept for personal use and the amount of cash found in the room, a reasonable juror could likewise have reasonably inferred that Petitioner's possession of those drugs was accompanied by an intent to sell or distribute them.

Because a rational factfinder could infer both Petitioner's knowing and at least constructive possession of the heroin, as well as an intent to distribute that heroin based on the testimony at trial, the evidence, viewed in the light most favorable to the state, was more than sufficient to support Petitioner's conviction, and he is not entitled to relief under the *Jackson* standard. As Petitioner has failed to show that the evidence against him was insufficient to support his conviction under the Due Process Clause, it is clear that the Appellate Division's rejection of his sufficiency of the evidence claim was neither contrary to nor an unreasonable application of *Jackson*, and that Petitioner is not entitled to habeas relief on that basis. *Eley*, 712 F.3d at 847.

In his reply brief, Petitioner attempts to buttress his claim by asserting that the Appellate

Division's conclusion that sufficient evidence was presented at trial was based on an unreasonable determination of the facts of this matter. That claim, however, is utterly without merit. All of the key facts which support the inference that Petitioner had spent the night in the attic bedroom before the search was conducted and that he possessed the heroin contained within the bedroom were clearly contained in the testimony of the officers involved in the search. The officers testified that they found Petitioner alone in the attic bedroom in his underwear (*see* Document 12 attached to ECF No. 8 at 11), that five glassine packages of heroin were found on the dresser in the room in a coffee cup (*Id.* at 14), that the remainder of the heroin was found in an eyeglass stand on the nightstand beside the bed where Petitioner apparently had been sleeping (*Id.*), that on the dresser there was also several hundred dollars in cash as well as two cellphones and Petitioner's car keys (*Id.* at 19-20, 35-36, 41), that Petitioner's mail was found within the dresser (*Id.* at 35, 48), that Petitioner's clothing was also found in the room (*Id.* at 40-41), and that Petitioner's boots were found in the closet of the room with two thousand dollars in them. (*Id.* at 48). Likewise, the State's expert witness testified as to his opinion that the quantity of drugs found in the room indicated that they were for distribution rather than personal use. (*Id.* at 66-67). Thus, all of the facts which support the inferences that Petitioner was sleeping in the attic bedroom, that the heroin found in the room was his, and that he possessed that heroin with the intent to distribute it were drawn directly from the record, and the Appellate Division's conclusion that there was sufficient evidence to support his conviction is well supported by the record. The Appellate Divisions' determinations were therefore not based on an unreasonable application of the facts of this matter, and Petitioner is not entitled to habeas relief.

## III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because Petitioner's claims are clearly without merit in light of the evidence in the record, Petitioner has failed to make a substantial showing of the denial of a constitutional right. As such, and because jurists of reason would neither disagree with this Court's conclusions nor conclude that the issues presented are adequate to deserve encouragement to proceed further, Petitioner is denied a certificate of appealability. *Id.*

## IV. CONCLUSION

For the reasons stated above, Petitioner's amended petition for a writ of habeas corpus (ECF No. 6) is DENIED and Petitioner is DENIED a certificate of appealability. An appropriate order follows.

Dated: April 19, 2017                                 *s/ Susan D. Wigenton*
                                                                   Hon. Susan D. Wigenton,
                                                                   United States District Judge